## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BUILDERS PLUMBING & HEATING | ) | |
| SUPPLY CO., | ) | |
| an Illinois corporation, | ) | Chapter 11 |
| GLENDALE PLUMBING SUPPLY CO., | ) | Honorable John H. Squires |
| INC., | ) | |
| a Wisconsin corporation, | ) | Case Nos.   03 B 49243 through |
| SOUTHWEST PIPE & SUPPLY, INC., | ) | 03 B 49246 |
| a Delaware corporation, and | ) | (Jointly Administered) |
| SPESCO, INC., | ) | |
| an Illinois corporation, | ) | |
| d/b/a FaucetsPlus.com, | ) | |
| | ) | |
| Debtors. | ) | |

### AGREED FINAL ORDER AUTHORIZING DEBTORS-IN-POSSESSION
### TO OBTAIN POSTPETITION FINANCING PURSUANT
### TO SECTION 364 OF THE BANKRUPTCY CODE,
### PROVIDING ADEQUATE PROTECTION AND GRANTING
### LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS

Upon the motion (the "Motion") of Builders Plumbing & Heating Supply Co.

("Builders", as debtor and debtor in possession), Spesco, Inc. ("Spesco" as debtor and debtor in

possession), Glendale Plumbing Supply Co., Inc. ("Glendale", as debtor and debtor in

possession), and Southwest Pipe & Supply, Inc. ("Southwest", as debtor and debtor in

possession), for the entry of an order (the "Final Order") pursuant to Sections 105, 361 and 364

of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy

Procedure 4001 authorizing them to (i) obtain postpetition financing pursuant to Section 364 of

the Bankruptcy Code from LaSalle Bank National Association, Bank One, NA, Cole Taylor

Bank, Associated Bank, National City Bank of Michigan/Illinois and Devon Bank (collectively,

the "Postpetition Lenders" and each a "Postpetition Lender"), subject to the terms and conditions

220092.8 040934-32692

set forth herein, (ii) grant security interests, mortgages and other liens and superpriority claims to

the Postpetition Lenders, and (iii) grant security interests, mortgages and other liens and

superpriority claims in order to provide adequate protection to and for the benefit of the

Prepetition Lenders (as hereinafter defined), all as more fully set forth herein, and upon the

proceedings held before this Court, after due and proper notice to all parties entitled thereto and

good and sufficient cause appearing therefor,

THE DEBTORS, THE PREPETITION LENDERS (HEREAFTER DEFINED)AND THE

POSTPETITION LENDERS STIPULATE, AND, WITH RESPECT TO THE MATTERS IN

THE LAST TWO SENTENCES OF PARAGRAPH M, AND IN PARAGRAPHS K, O, P AND

Q, THE COURT FINDS AS FOLLOWS:

      A.      On December 5, 2003 (the "Petition Date"), Builders, Spesco, Glendale and

Southwest (collectively, the "Debtors" and each a "Debtor"), each filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code. The Debtors are now operating their businesses

and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of

the Bankruptcy Code. There is presently no pending request or motion for appointment of a

trustee or examiner. On December 8, 2003, the Court entered an Interim Order Authorizing

Debtor-In-Possession To Obtain Postpetition Financing Pursuant To Section 364 Of The

Bankruptcy Code, Providing Adequate Protection And Granting Liens, Security Interests And

Superpriority Claims (the "Interim Order"). On December 9, 2003, the Debtors filed a Motion to

Approve Sale of Substantially All Assets (the "Sales Motion"). On December 11, 2003, the

United States Trustee appointed an unsecured creditors' committee (the "Committee") in these

chapter 11 cases (each a "Chapter 11 Case" and collectively, the "Chapter 11 Cases"). On

December 23, 2003, the Committee filed its objection to the Sales Motion and to Debtors'

Motion for Interim Order Authorizing Debtors-in-Possession to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims (the "Financing Motion"). On December 24, 2003, a hearing was held on the Sales Motion and the Financing Motion, at which time the Debtors, the Committee, the Prepetition Lenders, and the Postpetition Lenders reached an agreement that was read into the record substantially as follows:

1. The Committee approves the sale motion. The Committee only gets to raise objections to sales to insiders or their related parties; otherwise, it cannot raise any objections to sales.

2. The Committee can raise claims regarding the Banks' perfection of liens, the amount of the claims, and any preference actions; however, all other claims against the Banks are waived, including, without limitation, any claims against the banks for bad faith, lender liability, or subordination. The Committee has 90 days from December 23, 2003, to raise any claims regarding the Banks' perfection of liens and amount of the claims. The Committee has two years to raise any claims for preference actions.

3. Any claims that the estate has against the guarantors will be subordinated to the Banks' claims against the guarantors. The banks can apply payments from the guarantors in any manner they determine.

4. The carve-out for Committee professionals will include up to $25,000 for American Express for all fees/expenses through Tuesday, Dec 23, 2003, and then the Committee gets another $200,000 for the case for their professionals (attorneys and consultants).

5. The Committee shares, as a carve-out from the Banks' collateral recovery, in the net reductions of the Banks' loans (pre- and postpetition) to the Debtors, as follows: (a) a reduction of $10 million in the loans, no sharing, (b) reductions greater than $10 million in the loans, the Committee shares 5% on the excess up to reductions of $20 million, and (c) reductions greater than $20 million, the Committee shares 10% on the excess. For example, if the loans are reduced by $25 million, then the Committee's share would be equal to $1 million (5% on the second $10 million reduction plus 10% on the $5.0 million reduction over $20 million).

6. The Banks do not give up any deficiency claims; however, the Banks will subordinate their unsecured deficiency claims to give the other unsecured creditors a 7% return before the Banks share in the unsecured class. The 7% includes amounts the unsecured creditors receive from sharing in the reductions in the loans.

- 3 -

hereinafter referred to collectively as, the "Prepetition Loans" and each a "Prepetition Loan". As of the Petition Date pursuant to the Prepetition Financing Documents, KDA, 3801 and Addison owed the Prepetition Lenders approximately $19,763,667.57 with respect to revolving loans made by the Prepetition Lenders, exclusive of interest, fees, attorneys' fees, costs, expenses and other charges provided for in the Prepetition Financing Documents. For purposes of this Final Order, the "Prepetition Indebtedness" shall include the principal of the Prepetition Loans, all interest, fees, expenses and other charges owing in respect thereof, the LC Obligations for any letters of credit issued prior to the Petition Date, all obligations arising under or relating to the Swap Agreement, the loans made to KDA, 3801 and Addison and all interest, fees, expenses and other charges owing in respect of, such loans, including any reasonable attorneys', accountants', and financial advisors' fees that are chargeable or reimbursable under the relevant agreements relating to such loans or other indebtedness.

F.      Harvey Kogan, Steve Kogan and Abe Kogan (collectively, the "Guarantors") guaranteed the Prepetition Indebtedness of the Debtors and the loans to KDA, 3801 and Addison from the Prepetition Lenders pursuant to that certain Guaranty of Payment dated as of July 31, 2002 (the "Guaranty"). Except as stated therein, the Guaranty was limited to $5,000,000 in the aggregate.

G.      To secure the Prepetition Indebtedness, each of the Debtors granted to LaSalle Bank National Association as agent (the "Prepetition Agent"), for the benefit of the Prepetition Lenders, pursuant to the Prepetition Financing Documents, a security interest in, and a right of set-off against, all of the Debtors' personal property and assets, whether now owned or hereafter acquired by the Debtors, and wherever located, including, without limitation:

> all Accounts, Chattel Paper, Commercial Tort Claims, Documents, Equipment, Fixtures, General Intangibles, Instruments, Inventory, Investment Property, Pledged Deposits, and

- 6 -

Other Collateral, wherever located, in which the Debtors have or may acquire any rights or interests, and the proceeds (including Stock Rights), insurance proceeds and products thereof, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto (as such terms are defined in the Prepetition Financing Documents).

All of the foregoing collateral generally described above, and all proceeds thereof, shall be referred to herein collectively as the "Prepetition Collateral," and such liens shall be referred to herein as the "Prepetition Lenders' Liens". Pursuant to the terms of the Prepetition Financing Documents, all of the Prepetition Lenders' Liens are cross-collateralized and cross-defaulted. The Prepetition Agent perfected the Prepetition Lenders' Liens on the Prepetition Collateral by (i) filing a UCC-1 financing statement with the Illinois Secretary of State on July 25, 2002, with respect to Builders, (ii) filing a UCC-1 financing statement with the Illinois Secretary of State on July 24, 2002, with respect to Spesco, (iii) filing a UCC-1 financing statement with the Wisconsin Department of Financial Institutions on August 21, 2002, with respect to Glendale, and (iv) filing a UCC-1 financing statement with the Delaware Secretary of State on August 16, 2002, with respect to Southwest.

H.     Pursuant to the terms of the Prepetition Financing Documents, the Prepetition Lenders and each Debtor agreed that each Debtor would direct all of its account debtors to make all payments on the accounts directly to a post office box (each a "Lock Box"), designated by and under the exclusive control of the Prepetition Agent, and each Debtor would establish an account (each a "Lock Box Account" and collectively, the "Lock Box Accounts") with the Prepetition Agent into which each Debtor would immediately deposit all payments received by such Debtor. The Prepetition Agent would then apply the whole or any part of such collections or proceeds against such Debtor's Prepetition Indebtedness as the Prepetition Agent determined at its discretion.

- 7 -

I.      All cash of the Debtors wherever located on the Petition Date represented either proceeds of loans from the Prepetition Lenders to the Debtors or proceeds of Prepetition Collateral. Pursuant to the Prepetition Financing Documents, each Debtor believes that the Prepetition Agent has, for the benefit of the Prepetition Lenders, a valid first lien and perfected security interest in and lien on all cash of each Debtor, including but not limited to those funds held in the Lock Box Accounts on the Petition Date, and these funds constitute "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code.

J.      Each Debtor acknowledges that the Prepetition Lenders' Liens constitute valid, binding, enforceable, and perfected first-priority liens on the Prepetition Collateral subject only to liens described in or otherwise permitted by the Prepetition Credit Agreement, and are not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to certain liens permitted by the Prepetition Credit Agreement that are valid, binding, enforceable and in existence on the Petition Date and the "Carve-Out" (as hereinafter defined) in accordance with the provisions of this Final Order). Each Debtor further acknowledges that (a) the Prepetition Indebtedness constitutes legal, valid and binding obligations of each Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), and (b) no offsets, defenses, or counterclaims to the Prepetition Indebtedness exist. Finally, each Debtor hereby waives, releases and discharges the Prepetition Lenders and their affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Credit Agreement, any aspect of the prepetition relationship between the Prepetition Lenders and the Debtors, or any other acts or omissions by the Prepetition Lenders, in connection with the Prepetition Credit

- 8 -

Agreement or their prepetition relationship with the Debtors. Subject to Paragraph 9 below, this waiver is not binding on the Committee.

K.     An immediate and critical need exists for each Debtor to obtain funds in order to continue the operation of its business and to avoid irreparable harm to such Debtor's business. Without such funds, such Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to such Debtor's estate, creditors, customers and employees. At this time, each Debtor's ability to finance its operations and the availability to it of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the confidence of such Debtor's vendors and suppliers of other goods and services, to its customers and to the preservation and maintenance of the going concern value of such Debtor's estate. Each Debtor is unable to obtain the required funds in the form of (a) unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, (b) unsecured debt having the priority afforded by Section 364(c)(1) of the Bankruptcy Code, or (c) debt secured as described in Section 364(c)(2) or (3) or Section 364(d) of the Bankruptcy Code except as set forth herein.

L.     The Prepetition Lenders assert, and each Debtor acknowledges, that substantially all of such Debtor's assets are subject to the Prepetition Lenders' Liens. The Prepetition Lenders have objected to any further use of the Prepetition Collateral by each Debtor, except under the terms of this Final Order; including, without limitation, the payment to the Postpetition Lenders by the Debtors of a nonrefundable fee in the amount of $100,000.

- 9 -

M.     The Prepetition Lenders have indicated a willingness to consent and agree to the

Debtors' entering into the financing arrangements contemplated by this Final Order, and the

Postpetition Lenders are willing to provide the additional financing contemplated herein, all

subject to the conditions and provisions of this Final Order assuring, inter alia, that the

Postpetition Liens and the various claims, superpriority claims and other protections granted

pursuant to this Final Order will not be affected by any subsequent reversal or modification of

this Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code, which

is applicable to the postpetition financing arrangement contemplated by this Final Order. The

Postpetition Lenders and the Prepetition Lenders have acted in good faith in consenting to and in

agreeing to provide the postpetition financing contemplated by this Final Order. The reliance of

the Postpetition Lenders and the Prepetition Lenders on the assurances referred to above is in

good faith.

N.     Pursuant to the Bankruptcy Code and in light of the foregoing, each Debtor is

required to provide adequate protection to the Prepetition Lenders against any diminution in

value of the Prepetition Collateral from and after the Petition Date. The treatment requested by

each Debtor for the Prepetition Lenders and provided by this Final Order will minimize disputes

and litigation over collateral values, priming, use of cash collateral, and the need to segregate the

Prepetition Collateral and the proceeds thereof from the "Postpetition Collateral" (as hereinafter

defined) and the proceeds thereof.

O.     Notice of the hearing on the Motion and this Final Order has been provided (by

hand, facsimile, overnight mail or courier) to counsel to the Prepetition Lenders, the United

States Trustee, the 20 largest unsecured creditors of the Debtor for which the Debtor has contact

information, other entities claiming liens on or security interests in the Prepetition Collateral, and

- 10 -

parties who have requested notice of all proceedings in the Chapter 11 Cases. Such notice

constitutes good and sufficient notice under Section 102(1) of the Bankruptcy Code and

Bankruptcy Rule 4001, and no other notice need be given.

      P.     Good cause has been shown for the entry of this Final Order. Among other

things, entry of this Final Order will minimize disruption of the Debtors' businesses and

operations and permit them to meet payroll and other operating expenses, obtain needed supplies

and retain customer and supplier confidence by demonstrating an ability to maintain normal

operations. The financing arrangement authorized hereunder is vital to avoid immediate and

irreparable harm to the Debtors' estates. Consummation of such financing therefore is in the best

interests of the Debtors' estates.

      Q.     The financing and adequate protection arrangements authorized hereunder have

been negotiated in good faith and at arm's length among the Debtors, the Postpetition Lenders,

and the Prepetition Lenders. The terms of such financing and adequate protection arrangements

are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business

judgment consistent with its fiduciary duties and are supported by reasonably equivalent value

and fair consideration. As such, the Debtors, the Prepetition Lenders and the Postpetition

Lenders are entitled to the protections provided by Section 364(e) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

      1.     <u>Authorization to Borrow Monies.</u>

      (a)     Subject to Paragraph 1(d) hereof, the Debtors are authorized to borrow

money from the Postpetition Lenders and the Postpetition Lenders are authorized to lend, up to

$30,500,000 (which amount can be increased up to $31,300,000.00 with the written consent of

the Postpetition Lenders), which includes all amounts loaned pursuant to the Interim Order, on a

- 11 -

revolving basis pursuant to the terms of this Final Order and the provisions of the Prepetition

Financing Documents (except as otherwise set forth herein or as such documents are inconsistent

with the terms of this Final Order, in which event this Final Order shall control) and perform its

obligations hereunder and thereunder (the "Postpetition Loans").

      (b)     The Postpetition Loans shall be used only for the purposes and up to the

amounts listed in the budget attached hereto as Exhibit A, or in such other budget agreed to by

the Postpetition Lenders in their sole discretion (the "Approved Budget"). Notwithstanding the

foregoing, the Debtors shall be deemed to be in compliance with the Approved Budget so long as

their total cumulative cash disbursements, measured on a weekly basis, are less than 110% of the

amount provided for in the Approved Budget for each week. Each Tuesday, the Debtors shall

deliver to the Postpetition Lenders a variance report covering the week ending the preceding

Sunday describing, the Debtors' compliance with the Approved Budget, comparing actual sales,

receipts and expenditures and budgeted sales, receipts and expenditures, and explaining any

material variance between budgeted and actual results.

      (c)     The Debtors are authorized, without further Court order, to enter into such

non-material modifications and amendments to the Approved Budget as may be agreed upon in

writing by the Debtors and the Postpetition Lenders, after consultation with the Committee.

      (d)     At no time shall the Postpetition Loans exceed (i) $30,500,000 (which

amount can be increased up to $31,300,000.00 with the written consent of the Postpetition

Lenders), minus (ii) any LC Obligations, minus (iii) the Prepetition Loans, minus (iv) such

reserves as the Postpetition Agent elects, in its reasonable discretion, to establish from time to

time, including without limitation the Carve-Out (the "Maximum Borrowing Amount").

220092.8 040934-32692

(e)    Prior to the occurrence of an Event of Default (hereinafter defined), the Postpetition Loans shall accrue interest on the outstanding principal amount thereof at a rate equal to the "Prime Rate" announced from time to time by the Postpetition Agent plus 2.0%. After the occurrence of an Event of Default, the Postpetition Loans shall accrue interest on the outstanding principal amount thereof at a rate equal to the "Prime Rate" announced from time to time by the Postpetition Agent plus 4.0%. The Prepetition Indebtedness shall continue to accrue interest on the outstanding principal amount pursuant to the Prepetition Credit Agreement, provided however, that such accrual shall be provisional pending a determination that the Prepetition Lenders are oversecured and have valid and perfected liens.

(f)    In connection with the Postpetition Loans, upon entry of the Interim Order, the Debtors were authorized and were directed to pay, and paid, the Postpetition Lenders a financing fee equal to $100,000.00.

(g)    Intentionally Omitted.

(h)    From and after the date hereof (the "Effective Date"), the proceeds of the Postpetition Loans, the Prepetition Collateral, and the Postpetition Collateral (hereafter defined) shall not, directly or indirectly, be used to pay expenses of any Debtor or otherwise disbursed, except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Approved Budget or otherwise permitted under this Final Order; (b) compensation and reimbursement of expenses allowed by this Court to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtors and the Committee as provided for in this Final Order; and (c) amounts due to the Prepetition Lenders and the Postpetition Lenders, and their accountants, attorneys or other professionals hereunder or under the Prepetition Credit Agreement, which amounts shall be reasonable, but shall not otherwise be

- 13 -

subject to the approval of this Court (in the absence of any timely objection from the Debtor, the

United States Trustee or the Committee in accordance with Paragraph 13(a)); provided that the

foregoing shall not be construed as consent to the allowance of any of the amounts referred to in

the preceding clauses (a) or (b) and shall not affect the right of the Prepetition Lenders or the

Postpetition Lenders to object to any administrative claims, including fees and expenses of

professionals, sought to be assessed against or attributed to the Prepetition Lenders or the

Postpetition Lenders or their respective interests in the Prepetition Collateral or the Postpetition

Collateral and no such consent by the Prepetition Lenders or the Postpetition Lenders to any such

administrative claims shall be implied from any action, inaction or acquiescence by the

Prepetition Lenders or the Postpetition Lenders or otherwise.  Except as set forth in the

Approved Budget, neither the Prepetition Lenders nor the Postpetition Lenders have consented

or agreed to the use of the proceeds of the Postpetition Loans, Prepetition Collateral or the

Postpetition Collateral.

      2.      <u>Prepetition Collateral, Postpetition Collateral, Cash Collateral and Application of</u>
<u>Proceeds</u>.

      (a)      From and after the Effective Date until: (i) the indefeasible payment in full

in cash of the Postpetition Loans and the Prepetition Indebtedness; and (ii) the termination of any

commitments or obligations under this Final Order, each Debtor is hereby authorized and

directed to remit, and shall remit to LaSalle Bank National Association, as agent (the

"Postpetition Agent"), for the benefit of the Postpetition Lenders immediately upon such

Debtor's receipt thereof, or otherwise in accordance with such Debtor's current practices, all

"cash collateral" (as defined in Section 363 of the Bankruptcy Code) in its possession or control

arising from, or constituting proceeds of, the Prepetition Collateral or the Postpetition Collateral,

- 14 -

including all funds contained in the Lock Box Accounts on the Petition Date (collectively, the

"Cash Collateral"). Cash Collateral remitted (or deemed remitted) to the Postpetition Agent shall

be applied as and to the extent specified in Paragraph 2(b) hereof, provisionally, subject to

potential disgorgement as contemplated by the Investigation Period provisions of Paragraph 9

hereof. For purposes of this Final Order, "proceeds" of any collateral shall mean proceeds (as

defined in the Uniform Commercial Code) of such collateral as well as: (x) any and all proceeds

of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with

respect to such collateral; (y) any and all payments (in any form whatsoever) made or due and

payable to such Debtor in connection with any requisition, confiscation, condemnation, seizure

or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or

agency (or any person under color of governmental authority); and (z) other payments,

dividends, interest or other distributions on or in respect of any of such collateral, provided,

however, "proceeds" of any collateral shall not include any collateral that is pledged by a third

party or any guaranty from a third party.

      (b)     Except as otherwise provided in this Final Order, proceeds or payments of

Prepetition Collateral, Postpetition Collateral and Cash Collateral relating to Prepetition

Collateral or Postpetition Collateral remitted or deemed remitted to the Postpetition Agent in

accordance with Paragraph 2(a) or 8(b) hereof shall be applied by the Postpetition Agent as

follows (subject to potential disgorgement as contemplated by the Investigation Period

provisions of Paragraph 9 hereof):

           (i)     first, to the payment of all accrued interest, costs, and expenses on
the Prepetition Loans and to the payment of all accrued interest, costs, and legal
fees on obligations arising under or relating to the Swap Agreement with respect
to the Debtors, on a pari passu basis (subject to Section 506(b) of the Bankruptcy
Code);

- 15 -

(ii) second, to the payment of all outstanding principal on the Prepetition Loans and all remaining obligations arising under or relating to the Swap Agreement with respect to the Debtors, on a pari passu basis;

(iii) third, to the payment of all accrued interest, costs, and expenses on the Postpetition Loans; and

(iv) fourth, to the payment of all outstanding principal on the Postpetition Loans.

(c) The Prepetition Collateral, the Postpetition Collateral, and any and all payments or proceeds remitted, or deemed to be remitted, to the Postpetition Agent pursuant to the provisions of Paragraph 2 of this Final Order (or any similar provisions) shall be received, or deemed received, by the Postpetition Lenders free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or, based on Sections 506(c) of the Bankruptcy Code, except as otherwise provided herein below, and 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtors, and their respective successors and assigns, including any Chapter 11 or Chapter 7 trustee. In consideration of the retainer paid thereto prior to the Petition Date and the Postpetition Lenders' agreement to make funds available pursuant to the Approved Budgets to satisfy the Debtors' accrued and unpaid legal fees and expenses incurred in connection with this proceeding as of the Termination Date and as set forth in the Approved Budgets, Piper Rudnick LLP, as counsel for the Debtors, by execution of this Final Order, hereby waives and releases its rights to request that the Debtors or any subsequently appointed trustee(s) assert on its/their behalf a claim under Section 506(c) of the Bankruptcy Code against the Prepetition Collateral or the Postpetition Collateral for legal fees.

(d) Notwithstanding anything to the contrary contained in the Prepetition Credit Agreement, upon the request of any Postpetition Lender, the Debtors shall be required to deliver borrowing base certificates, in form reasonably acceptable to the Postpetition Agent.

- 16 -

Notwithstanding anything to the contrary contained in the Prepetition Credit Agreement,

Builders is hereby authorized to give notices, make requests, make payments, receive payments

and notices, give receipts and otherwise take action on behalf of the Debtors under Prepetition

Credit Agreement and this Final Order.

       3.      Postpetition Security Interests. Pursuant to Sections 364(c)(2) and (3) and

364(d)(1) of the Bankruptcy Code, as security for the Postpetition Loans, the Postpetition Agent,

for the benefit of the Postpetition Lenders, is hereby granted valid, binding, enforceable and

perfected liens (the "Postpetition Liens") in all currently-owned or hereafter-acquired property

and assets of each Debtor of any kind or nature, whether real or personal, tangible or intangible,

wherever located, now owned or hereafter acquired or arising (other than avoidance actions by

the Debtor's estate pursuant to Sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code

(the "Avoidance Actions")), and all proceeds, products, rents and profits thereof, including,

without limitation, all types of property that served as Prepetition Collateral and the proceeds,

products, rents and profits of all of the foregoing (all of the foregoing, the "Postpetition

Collateral"). The Postpetition Liens on the Postpetition Collateral shall be (a) senior perfected

liens pursuant to Section 364(d)(1) of the Bankruptcy Code on the Postpetition Collateral which,

on the Petition Date, was subject to valid and perfected senior liens or security interests in favor

of the Prepetition Agent for the benefit of the Prepetition Lenders, (b) first and senior perfected

liens pursuant to Section 364(c)(2) of the Bankruptcy Code on the Postpetition Collateral that

was not subject to perfected liens or security interests on the Petition Date, (c) cross-

collateralized among the Debtors and their portion of the Postpetition Collateral for the

Postpetition Loans, and (d) junior perfected liens pursuant to Section 364(c)(3) of the

Bankruptcy Code on Postpetition Collateral which, on the Petition Date, was subject to a valid

220092.8 040934-32692

and perfected lien, in favor of an entity other than the Prepetition Agent; in each case subject

only to the Carve-Out. Except as expressly set forth in this Final Order, the liens and security

interests granted in this Final Order shall not be: (y) subject to any lien that is avoided and

preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code; or (z)

subordinated to or made *pari passu* with any other lien pursuant to an Order of the Court under

Section 364(d) of the Bankruptcy Code or otherwise. Each Debtor hereby waives the right under

Section 546(g)* of the Bankruptcy Code to seek an order authorizing the return of goods

shipped to such Debtor before the Petition Date.

    4.    Carve-Out. As used in this Final Order, "Carve-Out" means: (i) the unpaid fees

of the clerk of the Bankruptcy Court or District Court, as applicable, and of the United States

Trustee pursuant to 28 U.S.C. § 1930(a) and (b); (ii) up to $250,000 for the aggregate allowed

unpaid fees and expenses payable under Sections 330 and 331 of the Bankruptcy Code to the

attorneys retained pursuant to Court order by the Debtors and incurred prior to the occurrence of

the Termination Date, plus up to $250,000 for the aggregate allowed unpaid fees and expenses

payable under Sections 330 and 331 of the Bankruptcy Code to the financial advisors retained

pursuant to Court order by the Debtors and incurred prior to the occurrence of the Termination

Date, plus an additional amount of up to $25,000 in the aggregate for fees and expenses of the

Debtors' attorneys and financial advisors incurred after the occurrence of the Termination Date

for such professionals; and (iii) up to $225,000 for the aggregate allowed unpaid fees and

expenses payable under Sections 330 and 331 of the Bankruptcy Code to professional persons

retained pursuant to Court order by the Committee, provided, however, that up to $25,000 of the

foregoing $225,000 is to be used solely for fees and expenses of the Committee's financial

advisor incurred through and including December 23, 2003; and further provided that the Carve-

- 18 -

220092.8 040934-32692

Out shall not include the fees and expenses, if any, of any such professional persons incurred, in respect of, arising from or relating to:  (x) the initiation or prosecution of any action contesting the validity, priority or extent of the claims or liens asserted by the Prepetition Agent (for the benefit of the Prepetition Lenders); (y) the initiation or prosecution of any action to avoid or recover preferences, fraudulent conveyances, or to exercise or assert other avoidance power claims against the Prepetition Collateral Agent or any Prepetition Lender; or (z) the initiation or prosecution of any other cause of action of a Debtor or its estate against the Prepetition Agent, any Prepetition Lender, the Postpetition Agent or any Postpetition Lender; and provided, further, that the Carve-Out shall only be available to pay the fees and expenses set forth in (ii) and (iii), above, to the extent unencumbered funds in such Debtor's estate are not otherwise available.

5.     Section 364(c)(1) Priority.  In addition to the foregoing Postpetition Liens (that are cross-collateralized) securing the Postpetition Loans, the Postpetition Loans shall have priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in Sections 105, 326, 328, 330, 331, 365(d)(3), 503(b), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code ("Superpriority"), subject only to the Carve-Out provided, however, that proceeds of Avoidance Actions may not be used to pay the superpriority claim granted pursuant to this Final Order.  Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtors' Chapter 11 Cases, in any Chapter 7 Case following conversion of a Debtor's Chapter 11 Case pursuant to Section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of the Prepetition Lenders or Postpetition Lenders against a Debtor arising, as

applicable, out of the Postpetition Loans or any provision of this Final Order or with the liens and security interests granted herein on, in and to the Postpetition Collateral.

6.     Modification of Automatic Stay. The automatic stay extant under Section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit the Prepetition Agent and the Prepetition Lenders, the Postpetition Agent and the Postpetition Lenders to receive, collect and apply payments and proceeds in respect of the Prepetition Collateral and the Postpetition Collateral in accordance with the terms and provisions of this Final Order.

7.     Events of Default. Each of the following shall be Events of Default under this Final Order:

(a)     Cash disbursements by the Debtors other than as allowed in the Approved Budget and in this Final Order or cumulative cash disbursements, measured on a weekly basis, are in excess of 110% of the amount provided in the Approved Budget, unless agreed to by the Postpetition Lenders in writing in their sole discretion;

(b)     Intentionally Omitted.

(c)     Intentionally Omitted.

(d)     Any disbursements or transfers by the Debtors to KDA, 3801, Addison or any insider as defined in Section 101(31) of the Bankruptcy Code, except as otherwise provided for in the Approved Budget;

(e)     the failure to comply with any of the obligations imposed on the Debtors by this Final Order;

(f)     the Postpetition Loans exceeds the Maximum Borrowing Amount;

- 20 -

(g)    the Postpetition Loans, plus the Prepetition Loans, plus any LC

Obligations, plus the reserves selected by the Postpetition Agent (as determined in its reasonable

discretion) exceeds (i) $28,600,000 at any time prior to January 29, 2004, (ii) $27,500,000 at any

time from January 30, 2004 through February 12, 2004, (iii) $26,500,000 at any time from

February 13, 2004 through February 27, 2004, or (iv) $25,000,000 at any time after February 27,

2004;

(h)    the Debtors failure to have obtained court orders approving at least $10

million of sales pursuant to Sections 363(b) and (f) of the Bankruptcy Code by the close of

business on February 6, 2004 and/or such sales have failed to close within eleven (11) days of

the entry of the order approving the applicable sales;

(i)    the filing of any adversary proceeding that (i) challenges the amount,

validity, enforceability, perfection or priority of the Prepetition Indebtedness or the Pre-petition

Lenders' Liens on the Prepetition Collateral in respect thereof, (ii) seeks to or otherwise consents

to the invalidation, subordination, recharacterization, avoidance or otherwise challenges the liens

granted to secure the Prepetition Indebtedness or the Postpetition Loans, or (iii) otherwise

asserts any claims or causes of action against the Prepetition Lenders on behalf of a Debtor's

estate;

(j)    the dismissal, suspension or conversion of a Chapter 11 Case to a case

under Chapter 7 of the Bankruptcy Code;

(k)    the appointment of a trustee in a Chapter 11 Case;

(l)    the entry of an order of the Bankruptcy Court granting another Super-

priority Claim or Lien pari passu with or senior to that granted the Prepetition Agent or the

Postpetition Agent;

- 21 -

(m)      the entry of an order of a court of competent jurisdiction reversing, staying, vacating or rescinding this Final Order;

(n)      the entry of an order of a court of competent jurisdiction amending, supplementing or otherwise modifying this Final Order, without the prior written consent of the Prepetition Agent or the Postpetition Agent;

(o)      the entry of an order of the Bankruptcy Court shall be entered in a Chapter 11 Case appointing an examiner having enlarged powers relating to the operation of a Debtor's business (powers beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code;

(p)      the entry of an order or orders granting relief from the automatic stay so as to allow a third party or third parties to proceed against any asset or assets of a Debtor which have a value in excess of $15,000 in the aggregate;

(q)      the filing of any pleading by a Debtor seeking, or otherwise consenting to, any of the matters set forth in clauses (i) through (p) above;

(r)      the occurrence of any event after the Petition Date which results in a Material Adverse Effect (as defined in the Prepetition Credit Agreement);

(s)      the filing by a Debtor of a plan of reorganization which treats the Prepetition Indebtedness or the Postpetition Loans in a manner which the Prepetition Lenders find objectionable in their sole discretion;

(t)      the reasonable belief of the Postpetition Lenders that the Debtors are not reasonably proceeding to sell the Prepetition Collateral and the Postpetition Collateral in a timely manner; or

(u)     any other Default (as defined in the Prepetition Credit Agreement) by a

Debtor, except for those specified in Sections 7.6 and 7.7 of the Prepetition Credit Agreement,

those as a result of the financial covenants contained is Section 6.28 of the Prepetition Credit

Agreement and those that are occasioned by the Chapter 11 Cases and this Final Order.

8.     Termination Date and Enforcement of Event of Default.

(a)     Each Debtor's authority to finance its operations herein provided shall

terminate (the "Termination Date") on the earlier of:

(i) February 27, 2004; and

(ii) upon notice (oral or written) to the counsel for the Debtors and counsel
for the Committee after the election of the Required Lenders (as defined in the
Prepetition Credit Agreement), in their sole and absolute discretion, after an Event
of Default unless extended by the mutual written agreement of the Debtors, the
Postpetition Agent and the Postpetition Lenders (and if it is extended, the
Postpetition Agent shall provide written notice to the counsel for the Committee);

provided, however, nothing herein shall obligate any Postpetition Lender to make any advances

after an Event of Default, except as otherwise provided in paragraph 2(c) above or for the

payments of any Carve-Out to the extent the Prepetition Lenders or the Postpetition Lenders

have received proceeds from the application of the Prepetition Loans or the Postpetition Loans.

On the Termination Date, all outstanding Postpetition Loans shall be due and payable at 11:00

a.m. Chicago time on that date. Notwithstanding the foregoing, upon the occurrence of an Event

of Default, the Postpetition Lenders shall have no obligation to make any additional Postpetition

Loans.

(b)     Any automatic stay otherwise applicable to the Prepetition Agent, the

Prepetition Lenders, the Postpetition Agent or the Postpetition Lenders is hereby modified so that

upon the occurrence of an Event of Default and at any time thereafter, the Prepetition Agent, the

Prepetition Lenders, the Postpetition Agent and the Postpetition Lenders shall have the right

upon the occurrence of an Event of Default, after four (4) business days written notice to the

Debtors and the Committee, to exercise the rights granted them hereunder as to all or such part of

the Prepetition Collateral or Postpetition Collateral, as the Prepetition Agent, the Prepetition

Lenders, the Postpetition Agent or the Postpetition Lenders, in their sole discretion, shall elect,

including the right to take possession of and sell the Prepetition Collateral or Postpetition

Collateral in accordance with the terms of the Uniform Commercial Code to satisfy the

Prepetition Indebtedness and the Postpetition Loans.  For such purpose, the automatic stay of

Section 362 of the Bankruptcy Code is hereby modified and vacated as against the Prepetition

Agent, the Prepetition Lenders, the Postpetition Agent and the Postpetition Lenders.  The

Prepetition Lenders and the Postpetition Lenders shall be entitled to apply the payments or

proceeds of the Prepetition Collateral and the Postpetition Collateral in accordance with the

provisions of this Final Order, and, in no event shall the Prepetition Agent, the Prepetition

Lenders, the Postpetition Agent or the Postpetition Lenders be subject to the equitable doctrine

of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or

Postpetition Collateral or otherwise.

> (c)    Notwithstanding the occurrence of the Termination Date or anything

herein to the contrary, all of the rights, remedies, benefits and protections provided to the

Prepetition Agent, the Prepetition Lenders, the Postpetition Agent and the Postpetition Lenders

under this Final Order, including, without limitation, the liens and superpriority granted herein,

shall survive the Termination Date.  Upon the Termination Date, the principal, accrued interest

and fees and all other amounts owed by the Debtors to the Prepetition Lenders and the

Postpetition Lenders hereunder or under the Prepetition Financing Documents shall be

- 24 -

immediately due and payable and the Prepetition Lenders and the Postpetition Lenders shall have all other rights and remedies provided in the Prepetition Credit Agreement and this Final Order.

(d)    Notwithstanding anything herein, no amounts under the Carve-Out, the Additional Carve-Out (hereafter defined), or the proceeds of the Postpetition Loans, or the proceeds of the Prepetition Collateral or the Postpetition Collateral shall be used for the purpose of: (i) initiating, prosecuting, or in raising (in any manner) any defenses to, the validity, extent, perfection, priority, or enforceability of the Prepetition Indebtedness or any liens or security interests with respect thereto, or any other rights or interest of the Prepetition Lenders or the Postpetition Lenders or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Prepetition Lenders or Postpetition Lenders; (ii) preventing, hindering, or delaying the Postpetition Lenders' enforcement or realization upon any of the Postpetition Collateral, except as specifically permitted herein; or (iii) modifying the Postpetition Lenders' rights hereunder.

9.    <u>Final Order; Investigation Period.</u>

(a)    Subject only to the provisions of subparagraph 9(b) below: (i) the findings and stipulations contained in paragraphs D, E and G through N above, and the repayment of the Prepetition Loans and all obligations arising under or relating to the Swap Agreement contemplated by Paragraph 2 above, shall be binding upon all parties in interest, including without limitation, the Debtors, the Committee, and any other statutory committees appointed in the Chapter 11 Cases and their respective successors and assigns, including any Chapter 11 or Chapter 7 trustee; (ii) the repayment of the Prepetition Loans and all obligations arising under or relating to the Swap Agreement pursuant to the terms of this Final Order shall be deemed final and indefeasible, not subject to objection, defense, subordination or otherwise avoidable; (iii) the

- 25 -

Prepetition Loans and all obligations arising under or relating to the Swap Agreement shall

constitute allowed claims, not subject to objection, defense or subordination and otherwise

unavoidable, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (iv) the

Prepetition Lenders' Liens on the Prepetition Collateral shall be deemed legal, valid, binding,

perfected, not subject to avoidance, defense, counterclaim, offset of any kind, or subordination;

(v) the Prepetition Lenders, the Prepetition Loans and all obligations arising under or relating to

the Swap Agreement, the Prepetition Financing Agreements and the Prepetition Lenders' Liens

on the Prepetition Collateral shall not be subject to challenge (including, without limitation, any

claim against the Prepetition Lenders asserting Avoidance Actions, bad faith or lender liability,

or seeking subordination of the Prepetition Lenders claims) by any party in interest seeking to

exercise the rights of the Debtor's estate, including without limitation, any Chapter 11 or Chapter

7 trustee; (vi) the Prepetition Lenders shall be deemed released of all claims, rights, causes of

action or defenses by, and all liabilities owing to, the Debtors, the Committee, and all of the

Debtors' creditors, arising out of or based on any facts or circumstances occurring prior to the

date hereof; and (vii) the Prepetition Lenders shall be deemed released of all claims, rights,

causes of action or defenses by, and all liabilities owing to, the Debtors, the Committee, all of the

Debtors' creditors, arising out of or based on the amount of the Prepetition Loans and all

obligations arising under or relating to the Swap Agreement or the perfection of the Prepetition

Lenders' Liens on the Prepetition Collateral.

      (b)     Notwithstanding the provisions of subparagraph 9(a) above, (i) any party

in interest with standing to do so (other than the Debtors) or the Committee may file and

prosecute an adversary proceeding challenging the amount of the Prepetition Loans and any

obligations arising under or relating to the Swap Agreement or the perfection of Prepetition

- 26 -

Lenders' Liens on the Prepetition Collateral in respect thereof no later than the date that is

seventy-five (75) days from the entry of the Interim Order, or, in the case of a Committee, March

23, 2004; and (ii) any party in interest with standing to do so (other than the Debtors) or the

Committee may file and prosecute an adversary proceeding challenging any transfers to the

Prepetition Lenders as avoidable under Section 547 of the Bankruptcy Code no later than two (2)

years after the Petition Date (the "Investigation Period"); provided, however, nothing contained

in this Final Order shall be deemed to affect, impair, or otherwise waive any rights, claims,

defenses, setoffs, or counterclaims which the Prepetition Lenders may have in connection with

any of the foregoing causes of action, all of which rights, claims, defenses, setoffs, or

counterclaims are expressly reserved.

   10. No Additional Liens.  Except as expressly consented to in writing by the

Postpetition Lenders or as otherwise provided herein (which shall not be unreasonably withheld

or conditioned), each Debtor shall be prohibited from at any time during the Chapter 11 Cases

granting liens on and security interests in the Prepetition Collateral, the Postpetition Collateral or

any portion thereof to any other parties pursuant to Section 364 of the Bankruptcy Code or

otherwise, which liens and security interests, as the case may be, are senior to, or on a parity

with, or junior to the liens and security interests of the Prepetition Lenders or the Postpetition

Lenders therein, excluding any liens resulting from Court-approved reclamation claims.  Except

in accordance with the terms of this Final Order, each Debtor shall be prohibited from at any

time using the Cash Collateral.  Except in accordance with the terms of this Final Order, each

Debtor shall be prohibited from incurring indebtedness which is inconsistent with this Final

Order.

11.     Financing Documents. Each Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, including, without limitation, the execution of additional security agreements, mortgage and financing statements, and to pay fees and expenses that may be required or necessary for such Debtor's performance hereunder, including, without limitation: the payment of the fees and other expenses described in this Final Order or the Prepetition Financing Documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys', financial advisers' and accountants' fees and disbursements.

12.     Independent Actions of Each Debtor. Each Debtor acknowledges that its promises and actions contained herein are made and taken of its own free will and volition. Each Debtor acknowledges that it has chosen, of its own free and voluntary acts, its legal counsel and financial advisors and accountants.

13.     Fees and Expenses Incurred by the Lenders; Automatic Perfection.

(a)     As part of the Debtors' obligations hereunder, and as consideration for the agreement of the Postpetition Lenders to provide the Postpetition Loans to the Debtors, the Debtors shall promptly reimburse the Prepetition Lenders for their reasonable costs, fees (including reasonable attorneys' fees), charges and expenses in connection with the Prepetition Indebtedness to the extent permitted under Section 506(b) of the Bankruptcy Code. As part of the Debtors' obligations hereunder, and as consideration for the agreement of the Postpetition Lenders to provide the Postpetition Loans to the Debtors, the Debtors shall promptly reimburse the Postpetition Lenders for their reasonable costs, fees (including reasonable attorneys' fees), charges and expenses to the extent provided for in the Prepetition Credit Agreement, as the case may be. The Prepetition Lenders' and Postpetition Lenders' respective counsel shall, from time

- 28 -

to time, serve copies of their bills for the legal fees and expenses referred to above upon (x) counsel for the Debtors, (y) counsel for Committee, and (z) the United States Trustee, each of whom shall have ten (10) calendar days after receipt of such bills to serve written objections thereto on the counsel submitting such bill and its client. In the absence of such written objection, the Postpetition Lenders are hereby authorized to pay those bills by a draw of the Postpetition Loans without obtaining prior Court approval (whether or not such fees are provided for in the Applicable Budget). If counsel for either the Debtors or the Committee objects to any bill of counsel for the Prepetition Lenders and Postpetition Lenders, said counsel may seek a Court order authorizing payment of its fees and expenses. The party objecting to the said fees or expenses of counsel for the Prepetition Lenders and Postpetition Lenders shall have the burden of proving that said fees and/or expenses are unreasonable. All such costs, fees, charges and expenses that are paid after the Petition Date shall be part of the Postpetition Loans.

(b)     The Postpetition Liens and all other liens and security interests granted herein shall, pursuant to this Final Order, be, and they hereby are, deemed automatically perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Prepetition Lender or Postpetition Lender shall, in their sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order, and the automatic stay of Section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

14.     Subordination of Claims against Guarantors; Application of Payments. Any claims that may be asserted by or on behalf of the Debtors or their estates against an individual

- 29 -

who is a Guarantor, and payments received by or on behalf of the Debtors or their estates or

successors and assigns (including any Chapter 11 or Chapter 7 trustee) in respect of any such

claims, shall be subordinate to payment of the Prepetition Lenders' and the Postpetition Lenders'

claims against any such Guarantor.  All monies paid to or received by or on behalf of the Debtors

or their estates in respect of any of their claims against an individual who is a Guarantor shall be

delivered to the Prepetition Lenders and/or the Postpetition Lenders, as applicable, for

application to the Guarantor's indebtedness to the Prepetition Lenders and/or the Postpetition

Lenders, as applicable.  The Prepetition Lenders and/or the Postpetition Lenders, as applicable

may apply any payments received from a Guarantor or pursuant to the foregoing sentence to any

guaranteed indebtedness.

     15.     Amendments.  Nothing herein shall prohibit the Debtors and the Postpetition

Lenders from amending the terms of the financing authorized hereby by mutual agreement and

upon three (3) calendar days advance notice to the Committee (or to the 20 largest unsecured

creditors if there is no Committee) without the necessity of obtaining Court approval thereof, so

long as such amendment does not alter the amount of loan proceeds advanced beyond the

Maximum Borrowing Amount, the security interests granted, the payments or deposits to be

made hereunder or extend the scheduled Termination Date of February 27, 2004.  The Debtors

shall provide timely notice of all such amendments to parties on the service list, including the

United States Trustee.

     16.     Benefits Pursuant to this Final Order.

     (a)     Based on the findings set forth in paragraphs P and Q of this Final Order

and in accordance with Section 364(e) of the Bankruptcy Code, that is applicable to the

postpetition financing arrangements contemplated by this Final Order, in the event any or all of

- 30 -

the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent

order of this or any other Court, no such modification, amendment or vacation shall affect the

validity and enforceability of any lien, security interest or priority authorized or created hereby.

Notwithstanding any such modification, amendment or vacation, any claim granted to the

Prepetition Agent, the Prepetition Lenders, the Postpetition Agent or the Postpetition Lenders

hereunder arising prior to the effective date of such modification, amendment or vacation shall

be governed in all respects by the original provisions of this Final Order, and the Prepetition

Agent, the Prepetition Lenders, the Postpetition Agent or the Postpetition Lenders, as the case

may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens

and priorities granted herein, with respect to any such claim.

(b)     Notwithstanding anything to the contrary contained in this Final Order,

following the Termination Date, the Postpetition Lenders shall pay any allowed administrative

expense that was (i) included in a specific line item of the Approved Budget and (ii) was

incurred but unpaid as of the Termination Date, but only if Debtors could have paid such

expense as of the Termination Date without exceeding the limits prescribed by the Approved

Budget.

(c)     In addition to the Carve Out, there shall be an amount (the "Additional

Carve-Out") equal to five percent (5%) of the "net reduction", if any, in the aggregate amount of

the Prepetition Loans and the Postpetition Loans (collectively, the "Aggregate Loans", which

shall not exceed $30,500,000 in the aggregate unless such amount is increased up to

$31,300,000.00 with the written consent of the Postpetition Lenders) from the Petition Date

greater than $10 million, but less than $20 million, and ten percent (10%) of the net reduction, if

any, in the Aggregate Loans of more than $20 million; provided, however, Aggregate Loans

- 31 -

shall be further reduced by the amount of any payments received by the applicable Prepetition

Lenders after the Petition Date to satisfy the obligations arising under or relating to the Swap

Agreement. As used herein, the "net reductions" shall be calculated as the difference between

the Aggregate Loans as of the Petition Date, and the Aggregate Loans after taking into account

(i) all increases of the Aggregate Loans that are permitted by this Final Order or any subsequent

order including, without limitation, all advances, interest, fees and expenses, and (ii) all

reductions in the Aggregate Loans from and after the Petition Date as a result of the application

of the proceeds of any Prepetition Collateral or Postpetition Collateral, including any credit bids

by the Prepetition Lenders or the Postpetition Lenders. For purposes of illustration only, if the

Aggregate Loans as of the Petition Date were $29 million, and thereafter, there are Postpetition

Loans (including interest, costs and fees) of $15 million, and total reductions of $30 million

(from liquidation of Prepetition Collateral and the Postpetition Collateral in the ordinary course

and outside of the ordinary course), the ultimate reduction would be $15 million ($29 million

minus ($29 million plus $15 million less $30 million)), and the Additional Carve-Out would

equal $250,000 (5% of $5 million). For purposes of calculating the Additional Carve-Out only,

interest shall not accrue on the Prepetition Loans or the Postpetition Loans after one year from

the entry of this Final Order, and all legal fees incurred after such date (for purposes of

calculating the Additional Carve-Out) shall only be reasonable legal fees. The Additional Carve-

Out shall (x) be for the exclusive benefit of the Debtors' unsecured creditors (including, without

limitation, any unsecured deficiency claims of the Prepetition Lenders and the Postpetition

Lenders), (y) not be subject to the payment of or satisfaction of any priority claims or secured

claims against the Debtors' estates or any expenses of administration other than fees and

expenses of the Committee's professionals, and (z) survive any termination of the financing

- 32 -

provided by the Postpetition Lenders; provided, however, that the requirements of the Additional

Carve-Out set forth in (x) and (y) above shall in no way be the responsibility of the Prepetition

Lenders and/or Postpetition Lenders, or impair, modify, limit or otherwise affect the rights and

remedies under this Final Order, provided, further, that nothing contain herein shall be deemed

or construed to be a release, waiver or discharge of the obligations under this Final Order.  The

Debtors' unsecured creditors shall not be required to return any disbursements provided to such

creditors as an Additional Carve-Out as a result of the Aggregate Loans increasing after the date

of such disbursement ~~as a result~~ due to any interest, fees or expenses incurred after the date of

any such disbursement, but shall be required to return any disbursements provided to such

creditors as a result of the Aggregate Loans increasing after the date of any disbursement as a

result of any payments received by the Prepetition Lenders or the Postpetition Lenders being

subsequently invalidated, declared to be preferential (or otherwise avoided), set aside and/or

required to be repaid to the Debtors' estates.

17.     Claims Against Debtors' Professionals.

(a)     Anything in this Final Order to the contrary notwithstanding, the proceeds

of any causes of action (including, without limitation, causes of action for malpractice,

negligence or fraud) by or on behalf of any one or more of the Debtors or their estates against

any person or professional who performed prepetition services for said Debtor(s), shall be

allocated forty percent (40%) to the Prepetition Lenders and the Postpetition Lenders

(collectively, the "Lenders") and sixty percent (60%) to the Debtors' unsecured creditors.  The

share allocated to the Debtors' unsecured creditors shall be included in the Additional Carve-

Out.  The fees and expenses incurred in pursuing any of the foregoing claims shall be reimbursed

from the proceeds of such causes of action before any distribution of the remainder of such

proceeds pursuant to the terms of this paragraph 17, provided, however, if such fees and

expenses are paid by the Postpetition Lenders and exceed such proceeds then forty percent (40%)

of such unreimbursed amounts shall be deemed to be administrative claims and sixty percent

(60%) of such unreimbursed claims shall be added to the Prepetition Lenders' and the

Postpetition Lenders' deficiency claims. The Postpetition Lenders may finance the cost of

pursuing such claims against Debtors' professionals or any person who performed prepetition

services for the Debtor(s), but shall have no obligation to do so.

(b)      The Prepetition Lenders shall have the right to designate counsel to pursue

the foregoing causes of action, with the consent of the Committee, which shall not be

unreasonably withheld or delayed, provided, however, if the Postpetition Lenders are not

financing the cost of pursuing the foregoing causes of action, the Committee shall have the right

to designate counsel to pursue such causes of action, with the consent of the Prepetition Lenders,

which shall not be unreasonably withheld or delayed. Notwithstanding anything to the contrary,

the Prepetition Lenders and the Committee have standing to bring any claims against Debtors'

professionals or any person who performed prepetition services for the Debtor(s).

(c)      The Prepetition Lenders and individual unsecured creditors retain any and

all causes of action which they held against any of the foregoing persons or professionals as of

the Petition Date which are not property of any of the Debtors' estates pursuant to Section 541 of

the Bankruptcy Code.

18.      No Waiver. Except as expressly provided herein, the entry of this Final Order is

without prejudice to, and does not constitute an express or implicit waiver of, or otherwise

impair, (a) any of the rights of the Prepetition Lenders or the Postpetition Lenders under the

Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the

- 34 -

Prepetition Lenders and the Postpetition Lenders to (i) request adequate protection of their interests in the Prepetition Collateral or the Postpetition Collateral or relief from or modification of the automatic stay extant under Section 362 of the Bankruptcy Code, (ii) request the dismissal or conversion of a Chapter 11 Case to Chapter 7 or the appointment of a Chapter 11 Trustee, and (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Lenders or the Postpetition Lenders, or (c) any and all rights, claims, or privileges granted to or for the benefit of the Committee by this Final Order.

19.     Deficiency Claim. The Prepetition Lenders and the Postpetition Lenders retain any unsecured deficiency claims.  Payment in respect of such claims shall be subordinate to a seven percent (7%) distribution from any and all sources to the Debtors' other unsecured creditors holding allowed claims, after which the deficiency claims, if any, of the Prepetition Lenders and the Postpetition Lenders shall share pro rata in funds available for distribution to unsecured creditors (including the Prepetition Lenders and the Postpetition Lenders to the extent they hold unsecured deficiency claims) including, without limitation, amounts described above in paragraph 16(c) and proceeds of any Avoidance Actions, but the foregoing deficiency claims shall not share in amounts allocated to the Debtors' unsecured creditors pursuant to Paragraph 17 above.

20.     Avoidance Actions. All Avoidance Actions are reserved for the Debtors' estates.

21.     Objections to Sales. The Committee may object to any sale pursuant to Sections 363(b) and (f) of the Bankruptcy Code on the grounds the said sale is (i) to an insider of a Debtor (as insider is defined in Section 101(31) of the Bankruptcy Code), or (ii) to an entity which an insider has an equity interest in excess of 20%.  The Committee may raise no other objection to

any sale of assets by or on behalf of one or more of the Debtors pursuant to Section 363(b) or (f) of the Bankruptcy Code or otherwise.

22.   KDA Shareholder Pledge.  In consideration of the execution hereof by all parties hereto, the KDA Shareholders (as indicated on the signature page hereto), have agreed to, and hereby absolutely and irrevocably assign to the Debtors' estates (the "KDA Equity Assignment") any and all of their respective rights to receive dividends or any other distribution on account of their voting or non-voting stock ownership interests in and to KDA, if any ("KDA Equity Interests").  In order to secure the KDA Equity Assignment, the KDA Shareholders have agreed to, and hereby shall, execute a pledge agreement for the benefit of the Debtors' estates ("Junior Stock Pledge"), in form and substance reasonably acceptable to the Committee and the Lenders. The KDA Equity Assignment and lien granted pursuant to the Junior Stock Pledge is, and shall at all times continue to be, expressly subject to, junior to and subordinated to the prior and perfected liens and security interests granted in favor of the Lenders by the KDA Shareholders in and to the KDA Equity Interests to secure the repayment of the Prepetition Indebtedness and Postpetition Loans (the "Lenders' KDA Stock Pledge").

23.   KDA Obligations.  The Debtors, the Committee, and any other statutory committees appointed in the Chapter 11 Cases and their respective successors and assigns, including any Chapter 11 or Chapter 7 trustee (collectively, the "Bankruptcy Estates"), agree that (i) the Bankruptcy Estates' rights, claims, or interests in and to the KDA Equity Assignment and Junior Stock Pledge are hereby absolutely, unconditionally and irrevocably subordinate to any and all security interests, liens, encumbrances and claims of the Prepetition Agent and/or the Postpetition Agent (collectively, the "Agent") against KDA or its assets including, without limitation, all obligations owed by KDA with respect to the Prepetition Financing Documents,

- 36 -

the Prepetition Indebtedness and the Postpetition Loans (including, without limitation, any interest, fees and costs accruing thereon, and any unsecured deficiency claims of the Lenders in the Chapter 11 Cases) (collectively, the "KDA Obligations" and the "KDA Security Interests") and the Lenders' KDA Security Interests; (ii) the Bankruptcy Estates will not instruct the KDA Shareholders to pay anything to the Bankruptcy Estates, and the Bankruptcy Estates agree not to accept payment of or seek to enforce any liens, claims or encumbrances against KDA or the KDA Shareholders for the KDA Equity Contributions unless and until, in each case, the Agent has notified the Debtors and the Committee in writing, that the KDA Obligations have been paid in full; (iii) the KDA Equity Assignment and the Junior Stock Pledge shall in no way impair, modify, limit or otherwise affect the rights and remedies of the Agent or the Lenders with respect to KDA whether arising under this Final Order or the Prepetition Financing Documents including, without limitation, the Agent's or the Lenders' rights, in their sole and absolute discretion, to (a) sell or consent to the sale, liquidation, or other disposition of the assets of KDA, (b) finance the operations of KDA, (c) incur any expenses including, without limitation, legal and other professional fees, insurance, and maintenance, which expenses will be added to the KDA Obligations, and (d) foreclose upon any assets of KDA; (iv) the Bankruptcy Estates will turn over to the Agent any sum or sums at any time paid, or received by the Bankruptcy Estates in violation of the terms of this paragraph and to reimburse the Agent for all costs, including reasonable attorneys' fees, incurred by it in the course of collecting the sum or sums should the Bankruptcy Estates fail to voluntarily turn over same to the Agent; and (v) the Agent is hereby authorized by the Bankruptcy Estates with respect to KDA to: (A) renew, compromise, extend, or otherwise change the time of payment or any other terms of the KDA Obligations, the Prepetition Financing Documents, or the Lenders' KDA Security Interest or otherwise; (B)

- 37 -

exchange, enforce, waive or release any security for the KDA Obligations; or (C) apply such

security and direct the order or manner of sale thereof in such manner as the Agent in its sole and

absolute discretion determines, all without notice to the Bankruptcy Estates and without affecting

the provisions of this paragraph.

     24.    KDA Information.  The KDA Shareholders and KDA hereby agree to provide

reasonable information regarding KDA to the Committee and their agents through KDA's

financial advisors and KDA hereby authorizes their financial advisors to communicate with the

Committee.

     25.    Conflicts.

        (a)    Except as modified by this Final Order, the Prepetition Financing

Documents shall remain in full force and effect with respect to the Prepetition Indebtedness.

        (b)    To the extent there exists any conflict between the terms of any of the

Prepetition Financing Documents and this Final Order, the terms of this Final Order shall govern

and control.

        (c)    To the extent there exists any conflict or inconsistency between the terms

of Paragraphs 16 through 24 and the other terms contained in this Final Order, the terms of

Paragraphs 16 through 24 shall govern and control.

     26.    Entry of Final Order.  This Final Order shall constitute findings of fact and

conclusions of law and shall take effect immediately upon execution hereof.  There is no just

reason to delay entry of this Final Order.

Dated:     January 20, 2004

              ENTERED:

              _____
              UNITED STATES BANKRUPTCY JUDGE

- 38 -

**APPROVED AS TO FORM AND SUBSTANCE:**

BUILDERS PLUMBING & HEATING SUPPLY CO.
SPESCO, INC.
GLENDALE PLUMBING SUPPLY CO., INC.
SOUTHWEST PIPE & SUPPLY, INC.


By: _____
　　　　One of Its Attorneys

DAVID N. MISSNER
PIPER RUDNICK LLP
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
Ph: (312) 368-2170
Fax: (312) 630-7399


LASALLE BANK NATIONAL ASSOCIATION

By: _____
　　　　One of its Attorneys

RICHARD M. BENDIX, JR. (#0168130)
SCHWARTZ COOPER GREENBERGER
& KRAUSS, CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, Illinois 60601
Ph: (312) 346-5443
Fax: (312) 264-2418


Agreed with respect to the § 506(c) waiver
contained in Paragraph 2(c) hereof only:

PIPER RUDNICK LLP

By: _____


THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: _____
　　　　One of its Attorneys

HAROLD L. KAPLAN (#3125293)
SUSAN BARNES DE RESENDIZ*
(#90785380)
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698
Ph: (312) 569-1000
Fax: (312) 569-3000
*Admitted in Ohio, District of Columbia,
Florida, and Texas

KDA SHAREHOLDERS (only with respect
to Paragraphs 22 and 24 )

By: _____

By: _____

By: _____

- 39 -